## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Clark Henry Hawkinson (02),<br><br>Defendant. | Case No. 18-cr-033 (SRN/HB)<br><br>**REPORT AND RECOMMENDATION** |

Thomas Hollenhorst, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for United States of America

Michael McDonald, 16670 Franklin Trail Southeast, Suite 250, Prior Lake, MN 55372, for Defendant Clark Henry Hawkinson

HILDY BOWBEER, United States Magistrate Judge

This case is before the undersigned United States Magistrate Judge on Defendant Clark Henry Hawkinson's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 151]. The case has been referred for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. The Court recommends that Defendant's motion be denied.

**I.    Background**

Defendant was charged by Indictment filed February 14, 2018, with one count of Conspiracy to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; and one count of Possession with Intent to Distribute

Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). (Indictment [Doc. No. 1].) Defendant filed several motions, including the motion to suppress, on August 1, 2018. Although Defendant's original motion sought broad relief, at the hearing on the motion he narrowed the subject matter to the search warrant executed at his residence on January 31, 2018. The application, search warrant, and receipt, inventory, and return were submitted to the Court at the hearing as Government Exhibit 2.

In Defendant's post-hearing memorandum filed in support of the motion to suppress evidence, Defendant argues there was no probable cause for the search warrant and that the *Leon* good-faith exception to the exclusionary rule does not apply. (Def.'s Mem. Supp. Mot. Suppress [Doc. No. 194].)

**II.   Discussion**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. To that end, every search warrant must be supported by probable cause, supported by a sworn affidavit, and describe with particularity the place to be searched and the items or persons to be seized. *Id.* The task of a judge presented with a search warrant is "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). As the very term implies, probable cause "deal[s] with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* at

231 (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)).

A court reviewing a previous determination of probable cause must give "great deference" to the issuing judge's assessment. *Id.* at 236 (quotation omitted). If the issuing judge "relied solely on the supporting affidavit to issue the warrant, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999) (quotation omitted).

Orono Police Officer Matt Siltala provided the affidavit in support of the search warrant application. (Gov't Ex. 2.) He averred the following facts and circumstances in his affidavit. Since mid-2016, several law enforcement agencies, including the West Metro Drug Task Force, the Minnesota Bureau of Criminal Apprehension, the Federal Bureau of Investigation, and the Drug Enforcement Administration, have been jointly investigating a large-scale, prison-based, drug-trafficking operation ("DTO"). (Gov't Ex. 2 at 2.) The investigation revealed that the DTO smuggled up to 100 pounds of methamphetamine and heroin a month from Mexico to California, and then from California to Minnesota. (*Id.*) Investigators gleaned this information from jail visitor logs, recorded jail telephone calls, seized contraband, and a "vetted confidential reliable informant" ("CRI"), who provided information about the DTO for about a year before the warrant was obtained. (*Id.*)

The CRI is an inmate at the Bureau of Prisons facility in Duluth, Minnesota, and "a close ally to many of the DTO members," including an inmate named Vicente Vasquez, who allegedly coordinated much of the DTO's activities. (*Id.* at 2-3.) The CRI

3

is privy to details such as telephone numbers, smuggling routes, distribution hubs, the names of DTO members, and arrival dates and times of drug couriers. (*Id.* at 3.) Investigators corroborated much of the information provided by the CRI, some of which is set forth below, and the CRI provided information to law enforcement in the past that led to the seizure of large quantities of methamphetamine. (*Id.*)

The CRI told investigators that one of the primary drug distributors for Vasquez is a person nicknamed "El Pescador," whom investigators determined was Defendant. (*Id.*) The CRI said that Defendant was a "lb level" distributor. (*Id.*) During subsequent surveillance, officers saw Defendant meet numerous times with an individual named Livier Hernandez for "large exchanges of USC." (*Id.*) The CRI also told investigators that Hernandez had assisted in coordinating a large shipment of narcotics into the Hennepin County area. (*Id.*) In December 2017, Officer Siltala conducted "an undercover . . . operation in which he made controlled purchases of lb quantities of methamphetamine from a DTO member identified as Sergio Tomas De Dios Artechi . . . ." (*Id.*) Surveilling officers saw Artechi travel directly to Defendant's residence at 4xxx 189th Lane Northeast in East Bethel, Minnesota, at least five times. (*Id.*) After Hernandez was arrested and deported, surveilling officers had reason to believe that Artechi took over her drug trafficking activities, including delivering methamphetamine to Defendant and collecting money in return. (*Id.* at 3-4.) The CRI told officers that Artechi delivered as much as seven pounds of methamphetamine to Defendant in December 2017. (*Id.* at 4.)

In the seventy-two hours before the search warrant was obtained, Officer Siltala

4

conducted an undercover operation in which two suspects were arrested after delivering twenty pounds of crystal methamphetamine.  (*Id.*)  One of the suspects allowed a search of his cell phone, and officers found messages from Vasquez to the suspect giving directions to Defendant's residence.  (*Id.*)  Defendant's address was also found in a text message on the phone.  (*Id.*)  Based on the above events, Officer Siltala believed that narcotics and other evidence of a crime would be found at Defendant's residence.  (*Id.*)

The Court finds that Officer Siltala's affidavit established probable cause to believe that narcotics and contraband or incriminating evidence would be found at Defendant's residence.  Officer Siltala adequately described the investigation of the DTO and Defendant's alleged participation in the DTO.  Officer Siltala was not required to describe the internal workings of the investigation or "who was involved, why they were involved, and where the incident occurred" for each incident or encounter, as Defendant argues.  (*See* Def.'s Mem. at 2, 4 [Doc. No. 194].)  Nor was Officer Siltala required to provide a further "basis of knowledge" for the details and circumstances he described.  Based on the totality of information obtained during the investigation, as described in Officer Siltala's affidavit, there was probable cause to believe that Defendant was a primary drug distributor for a large-scale methamphetamine and heroin smuggling operation and that contraband or evidence would be found at his residence.

The investigating officers relied not only on information obtained through their independent investigative efforts, but also information obtained from a CRI.  Defendant challenges the credibility of the CRI.  With respect to the information obtained from the CRI, the officers' surveillance of Defendant and Hernandez corroborated the CRI's

5

information that Defendant was a drug distributor for the DTO. The CRI's identification of Defendant as a suspected drug trafficker was further corroborated through an undercover drug transaction between Officer Siltala and Artechi and surveillance of Artechi traveling to and from Defendant's house at least five times. Finally, the CRI's identification of Defendant as an associate of Vasquez and a member of the DTO was corroborated by the search of a suspect's phone, which included a message from Vasquez to the suspect giving directions to Defendant's residence. The Court finds that law enforcement adequately corroborated information from the CRI such that Defendant's attack on the CRI's credibility falls short. *See United States v. Humphreys*, 982 F.2d 254, 259 (8th Cir. 1992) ("[W]here the informants' information is at least partially corroborated, attacks upon credibility and reliability are not crucial to the finding of probable cause.").

Even if probable cause were lacking, however, the Court finds that the good-faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897, 922 (1984), applies. Defendant has not shown that the judge who issued the warrant "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *See id.* at 923. The affidavit was not so lacking in probable cause that reliance on it was objectively unreasonable, nor was the warrant itself so facially deficient that its validity could not be presumed. *See id.* Finally, there is no evidence that the issuing judge "wholly abandoned his judicial role." *See id.* Therefore, even if probable cause were lacking, exclusion of the evidence is not appropriate.

In concluding, the Court briefly addresses one issue precipitated by the Government's post-hearing memorandum. In a footnote, the Government characterized one of the averments in Officer Siltala's affidavit as "overbroad." (Gov't's Resp. at 4 n.2.) The specific allegation was that Siltala "made controlled purchases of lb quantities of methamphetamine from a DTO member identified as" Artechi. (Gov't Ex. 2 at 3.) The attorney for the Government represented that he "is aware of only one purchase of a pound quantity of methamphetamine from Artechi by another police undercover officer working on the investigation." (Gov't Ex. 4.) The Government did not specifically address the effect of this inaccuracy on the validity of the search warrant, but neither did Defendant request a *Franks* hearing. The Court finds, on the present record, no reason to believe that Officer Siltala intentionally or recklessly included the inaccurate statement in his affidavit, and finds that the inaccurate statement was not necessary to the probable cause determination. *See United States v. Jacobs*, 986 F.2d 1231, 1233-34 (8th Cir. 1993) (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). Even one controlled purchase would have contributed to the basis for probable cause.

Accordingly, based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Clark Henry Hawkinson's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 151] be **DENIED**.

Dated: October 22, 2018

    s/ *Hildy Bowbeer*
HILDY BOWBEER
United States Magistrate Judge

7

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under D. Minn. LR 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.